IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    10 S. Howard Street, 3rd Floor<br>    Baltimore, Maryland 21201 | )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | **COMPLAINT AND JURY TRIAL DEMAND** |
| v. | )<br>)<br>) | |
| MANUFACTURERS AND TRADERS TRUST COMPANY d/b/a M&T BANK,<br>    4552 Edmondson Avenue<br>    Baltimore, Maryland 21229 | )<br>)<br>)<br>)<br>) | Civil Action No. |
| Defendant. | )<br>) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended through the ADA Amendments Act of 2008 (ADA), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Candace McCollin ("McCollin"), who was adversely affected by such practices. As alleged with greater particularity below, the Equal Employment Opportunity Commission ("the Commission" or "EEOC") alleges that Defendant Manufacturers and Traders Trust Company d/b/a M&T Bank ("Defendant" or "M&T") unlawfully discriminated against McCollin by failing to reasonably accommodate her and terminating her employment because of her disability and record of disability, in violation of the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) & (3); and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland, Northern Division.

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission, is an agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) & (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) & (3).

4. At all relevant times, Defendant has continuously been a New York corporation doing business in the State of Maryland and the City of Baltimore, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, McCollin filed a charge of discrimination with the Commission alleging violations of Title I of the ADA by Defendant.

8. On March 31, 2016, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. On July 26, 2016, the Commission issued to Defendant a Notice of Failure of Conciliation.

12. All conditions precedent to the initiation of this lawsuit have been fulfilled.

13. At all relevant times, McCollin was an individual with an actual disability and record of a disability as defined by the ADA.

14. At all relevant times, McCollin suffered from cervical insufficiency.

15. At all relevant times, and a result of her disability, McCollin was substantially limited in the major life activities of walking, standing, lifting, bending, and reproductive functions.

16. At all relevant times, McCollin was qualified to perform the essential functions of her job.

17. On August 19, 2002, McCollin began working for Provident Bank as a Reinforcement Team Sales Associate. In May 2009, Defendant acquired Provident Bank and inherited many of its employees, including McCollin, who remained a Branch Manager at the Mondawmin Mall Shoppers Branch.

18. In 2008, McCollin was diagnosed with cervical insufficiency after suffering a miscarriage during her pregnancy.

19. In 2010, McCollin again became pregnant and underwent transvaginal cerclage - a medical procedure in which stitches are used to close the cervix during pregnancy to help prevent pregnancy loss or premature birth. Despite having the cerclage performed, McCollin suffered another miscarriage.

20. As a result of her two miscarriages, McCollin was advised by her treating physician that she would need to undergo cervical cerclages for all future pregnancies.

21. In or around spring 2012, McCollin learned that the branch she managed was scheduled to permanently close. Accordingly, she applied to become Branch Manager at Defendant's Edmonson Village location – a position that had been vacant for months prior to her application.

22. In or around September 2012, Administrative Vice President and Regional Retail Manager Anna Bartolotta selected McCollin for the Edmonson Village Branch Manager position. In or around that same time, Bartolotta became her supervisor.

23. In November 2012, McCollin learned she was pregnant and informed Bartolotta. She shared with Bartolotta details surrounding her previous miscarriages and explained her need to undergo surgery on December 10, 2012 in order to prevent another miscarriage.

24. On November 29, 2012, pursuant to Bartolotta's instructions, McCollin initiated a short-term disability claim with Defendant's third-party provider, Unum. She began FMLA leave on a full/continuous basis on December 10, 2012.

25. On December 31, 2012, McCollin's treating physician submitted to Unum documents reflecting McCollin's inability to return to work until her July 1, 2013 delivery date.

26. On April 4, 2013, John Burke, Senior Employee Relations Specialist, sent a letter to McCollin informing her it would fill her position unless it received certification from her healthcare provider within 10 days, indicating she was cleared to return to work. The letter further stated that McCollin was entitled to its redeployment services, administered through its third-party provider, Career Partners Internationals, to assist her with gaining redeployment in the workforce.

27. According to Defendant, McCollin had 30 days to secure employment or she would be terminated. Thereafter, McCollin would be afforded an additional 60 days of redeployment services; however, as an external candidate.

28. McCollin received clearance to return to work in August 2013; however, Defendant failed to reassign McCollin to a vacant position for which she was qualified.

29. Between August 3, 2013 to August 29, 2013, McCollin unsuccessfully applied to five positions for which she met the minimum qualifications, including four Branch and Assistant Branch Manager positions.

30. Defendant terminated McCollin's employment on September 9, 2013, approximately 30 days after its redeployment services began.

31. McCollin applied to three additional Branch and Assistant Branch Manager positions between September and October 2013. Despite meeting the minimum qualifications for each, McCollin was neither selected for, nor reassigned to, any of these positions.

32. In addition to the positions to which McCollin applied, Defendant had seventeen (17) additional Branch and Assistant Branch Manager vacancies in its Greater Baltimore Region between July and October 2013. Despite meeting the minimum qualifications for each, Defendant failed to reassign McCollin to any of these positions.

33. Since at least April 4, 2013, Defendant engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. §§ 12112(a) and (b). The unlawful employment practices include:

   a. failing to provide McCollin a reasonable accommodation of reassignment; and

   b. discharging McCollin because of her disability and record of disability.

34. The effect of the practices complained of in paragraphs 13-33 above has been to deprive Patterson of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability and record of disability.

35. The effect of the practices complained of in paragraphs 13-33 above has been to deprive McCollin of equal employment opportunities and otherwise adversely affect her rights under the ADA resulting in lost wages, emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life, because of her disability and record of disability.

36. The unlawful employment practices complained of in paragraphs 13-33 above were intentional.

37. The unlawful employment practices complained of in paragraphs 13-33 above were done with malice or with reckless indifference to the federally protected rights of McCollin.

## **PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from discriminating by failing to provide reasonable accommodations to individuals covered by the ADA and discharging qualified employees because of a disability and record of disability;

B. Order Defendant to institute and carry out policies, practices, and programs that eradicate the effects of its past and present unlawful employment practices;

C. Order Defendant to make whole McCollin by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to frontpay and reinstatement;

D. Order Defendant to make whole McCollin by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, including but not limited to any job search expenses and medical expenses, and other pecuniary losses, in amounts to be determined at trial;

E. Order Defendant to make whole McCollin by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including pain and suffering, emotional distress, indignity, inconvenience, loss of enjoyment of life, loss of

self-esteem, and humiliation, in amounts to be determined at trial;

F.  Order Defendant to pay McCollin punitive damages for its malicious and reckless conduct, as described above, in an amount to be determined at trial;

G.  Grant such further relief as the Court deems necessary and proper in the public interest; and

H.  Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DEBRA M. LAWRENCE
Regional Attorney

MARIA SALACUSE
Supervisory Trial Attorney
Federal Bar No. 15562

CHIOMA CHUKWU
Trial Attorney

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Baltimore Field Office
10 S. Howard Street, 3rd Floor
Baltimore, Maryland 21201
(410) 209-2730 (phone)
(410) 962-2221 (fax)
Chioma.Chukwu@eeoc.gov

9