# EXHIBIT I

UNITED STATED DISTRICT COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

-------------------------------------------
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                Plaintiff,

       - vs -    Case No.
                1:16-cv-03180-ELH

MANUFACTURERS AND TRADERS TRUST COMPANY,
d/b/a M&T BANK,

                Defendant.
-------------------------------------------


      Examination before trial of ARTHUR SALMAN, taken pursuant to the Federal Rules of Civil Procedure, at the Equal Employment Opportunity Commission, 6 Fountain Plaza, Suite 350, Buffalo, New York, on November 2, 2017, commencing at 10:06 a.m., before LORI K. BECK, CSR, RDR, CRR, Notary Public.

```
 1   APPEARANCES:       U.S. EQUAL EMPLOYMENT
                        OPPORTUNITY COMMISSION,
 2                      By CHIOMA CHUKWU, ESQ.,
                        City Crescent Building,
 3                      10 S. Howard Street, 3rd Floor,
                        Baltimore, Maryland  21201,
 4                      (410) 209-2730,
                        chioma.chukwu@eeoc.gov,
 5                      Appearing for the Plaintiff.

 6                      REED SMITH LLP,
                        By BETTY GRAUMLICH, ESQ.,
 7                      Riverfront Plaza - West Tower,
                        901 East Byrd Street, Suite 1700,
 8                      Richmond, Virginia  23219-4068,
                        (804) 344-3423,
 9                      bgraumlich@reedsmith.com,
                        Appearing for the Defendant.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    INDEX TO EXHIBITS

 2    Exhibit           Description               Page

 3    SALMAN            Third Amended Notice of     10
      EXHIBIT 1         30(b)(6) Deposition
 4
      SALMAN            document Bates number       32
 5    EXHIBIT 2         M&T_0000305

 6    SALMAN            document Bates number       32
      EXHIBIT 3         M&T_0000307
 7
      SALMAN            document Bates numbers      71
 8    EXHIBIT 4         M&T_0000451 through
                        M&T_0000452
 9
      SALMAN            document Bates numbers      79
10    EXHIBIT 5         M&T_0001770 through
                        M&T_0001771
11
      SALMAN            document Bates numbers      84
12    EXHIBIT 6         M&T_0001810 through
                        M&T_0001811
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    INDEX TO WITNESSES

2   Witness                  Examination                    Page

3   ARTHUR SALMAN          BY MS. CHUKWU:                     5

4

5

6               DOCUMENT PRODUCTION REQUESTS

7
    PAGE        LINE
8
     16          3
9
     33          8
10
     81         21
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1  talent acquisition department?
 2       A.   Broadly speaking, they're responsible
 3  for seeking out internal and external applicants to
 4  fill open positions at the bank.
 5       Q.   When you say internal, what do you mean
 6  by that?
 7       A.   Current employees who may be interested
 8  and prepared for a different position.
 9       Q.   An employee who is going through the
10  redeployment process, are they considered internal
11  employees?
12       A.   They can be.
13       Q.   Under what circumstance would they not
14  be?
15       A.   Depending upon the timing of their
16  application.
17       Q.   What does their timing of application
18  have to do with the status of their employment?
19       A.    If they are returning from disability
20  and their position had been filled, they are given
21  a period of time to look for positions still as an
22  employee, and that period of time is 30 days from
23  the date that they are released to return with or
24  without an accommodation.
25            And I am describing the process as it

 1  existed when Ms. McCollin would have been released
 2  to return to work.
 3       Q.   For the year 2013?
 4       A.   Yes.
 5       Q.   After that 30 days expired after an
 6  employee was released to return to work, what would
 7  be the status of that employee?
 8       A.   If they did not -- if they were not
 9  successful in finding a job within that 30-day
10  period, their employment would terminate.
11       Q.   At that time, is that individual
12  considered an internal employee?
13       A.   After that time, they are not.
14       Q.   What are external -- strike that.
15            You mentioned that talent acquisition is
16  responsible for seeking to fill -- I apologize.
17            You mentioned something about internal and
18  external.  Can you clarify what you were referring
19  to earlier?
20       A.   It's simply that an internal candidate
21  is an individual who is a current employee at the
22  bank.  External candidate is one who is not a
23  current employee but hoping to become so.
24       Q.   So with respect to talent acquisition,
25  they are seeking external candidates as well as

 1  interpreting, or implementing the workforce
 2  restructure process in 2013?
 3          MS. GRAUMLICH:  Objection.  It's beyond the
 4  scope.
 5          THE WITNESS:  Again, I can't recall the
 6  specific time period in which the legal department
 7  would have provided that assistance.
 8          BY MS. CHUKWU:
 9      Q.  But would they have provided
10  assistance?
11      A.  In the ordinary course from time to
12  time, yes.
13      Q.  With respect to talent acquisition and
14  its functions, are the employees responsible for
15  reviewing applications received from internal
16  and/or external candidates?
17      A.  Are the employees within talent
18  acquisition responsible for doing so?
19      Q.  Correct.
20      A.  Yes.
21      Q.  Are the employees within talent
22  acquisition responsible for deciding which
23  employees advance through the application process?
24      A.  They have responsibility for making
25  that determination, yes.

1      Q.   Do talent acquisition employees work
2   autonomously in making decisions as to who
3   advances?
4      MS. GRAUMLICH:  Objection to form.
5      THE WITNESS:  Autonomously from whom?
6      BY MS. CHUKWU:
7      Q.   That particular employee.  Do they have
8   the ability on their own to make a decision about
9   who advances without consulting anyone else?
10     A.   Yes, but I do not believe that in all
11  cases for all positions.
12     Q.   For branch manager positions, do they
13  have that ability?
14     A.   To independently decide who is to
15  continue in the interview process?
16     Q.   Correct.
17     A.   I believe generally speaking, yes.
18     Q.   What about for assistant branch manager
19  positions?
20     A.   Same answer.
21     Q.   What about for M&T at Work specialist
22  positions?
23     A.   Same answer.
24     Q.   What about for enhanced due diligence
25  investigators or compliance specialist positions?

1    A.    Same answer.

2    Q.    Moving on, next topic, topic number 3:

3    Describe the job requisition process used by

4 M&T Bank for the following positions.

5    Branch managers.

6    A.    When a branch manager position is open

7 either as a result of the current incumbent leaving

8 that position or where the bank adds a branch

9 manager position that did not previously exist, the

10 position will be created as an open requisition,

11 and talent acquisition will begin the process of

12 seeking candidates for consideration.

13    Q.    What does it mean to create as an open

14 requisition?

15    A.    In the bank's nomenclature, an open

16 requisition is an open position.

17    So, for instance, we have a requisition

18 report. That report reflects open positions at the

19 bank.

20    Q.    Is open the same as vacant?

21    A.    Correct.

22    Q.    How is a requisition open?

23    MS. GRAUMLICH:  Objection to form.

24    BY MS. CHUKWU:

25    Q.    Yes, that was very --

 1  under which that is not the practice?
 2     A.  That is -- that is to say there are
 3  circumstances where jobs are not posted internally
 4  before they are filled.
 5     Q.  In those instances, do you know why
 6  that decision would be made to post externally
 7  before posting internally or at the same time?
 8     A.  Well, to be clear, we don't refer to
 9  the advertisement of a position externally as
10  posting.  Posting relates to the process by which
11  internal existing employees can seek open
12  positions.
13     As to why that happens, there are a number
14  of reasons.
15     Q.  Such as?
16     A.  The skill set required for the position
17  is so unique that a candidate externally may have
18  been selected prior to the position being open.
19     Q.  Just so I understand, when you say
20  prior to being open, is that the same thing as
21  prior to being posted -- excuse me, advertised
22  externally?
23     A.  No, I should -- I should clarify.
24     The -- an exception to the posting policy
25  could exist when an individual has been identified

 1  by management as the desired candidate to fill a
 2  position at the time it becomes open and perhaps in
 3  the time period leading up to when it is open.
 4        Q.   Is that exception memorialized in
 5  writing?
 6        A.   It's accounted for in the posting
 7  policy.  Not in the exact words that I used, but
 8  the policy allows for exceptions.
 9        Q.   And you mentioned one reason that M&T
10  may advertise a position externally at the same
11  time or prior to posting internally is if there is
12  a skill set that is required that's unique.
13        A.   If I said that, I should clarify.
14        The -- there are circumstances that would
15  give rise to an exception to offering existing
16  employees an opportunity to post for open positions
17  before considering other candidates.  Consideration
18  of those candidates may or may not be the result of
19  an advertising exercise.
20        It may be that individuals are known to the
21  bank who would, for instance, possess a unique
22  skill set that the bank desires to select for that
23  position without going through either an internal
24  posting or external advertising process.
25        Q.   If an individual has been identified

1 based on their skill set at -- at or around the
2 time that it is advertised, what is the process
3 that's used for that employee to be onboarded?
4     A.  Well, it would depend.  They may still
5 go through a full interview process, beginning with
6 talent acquisition and making its way -- the way
7 through the hiring manager, or the person may, for
8 instance, circumvent talent acquisition and begin
9 interviewing with either the hiring manager or
10 senior members of management.
11     In any event, they would likely begin their
12 onboarding process through talent acquisition so
13 that the basic information regarding that candidate
14 could be gathered by talent acquisition.
15     Q.  So you testified that they may still go
16 through talent acquisition or they may be able to
17 circumvent talent acquisition and go directly to
18 the hiring managers for interview?
19     A.  That's largely correct.
20     Q.  Would they be required to submit an
21 application in an instance where they've been
22 identified?
23     A.  I believe so.
24     Q.  And could there be an instance where an
25 individual who's been identified would bypass

 1  talent acquisition and hiring managers and go
 2  straight to the onboarding process based on their
 3  identification?
 4       A.   No, there would still be a vetting
 5  process before that person were onboarded.
 6       Q.   When you say vetting, are you referring
 7  to the interview?
 8       A.   Correct.
 9       Q.   Is there anything other than interview
10  that would comprise that vetting?
11       A.   Well, background check.
12       Q.   In the instances where an individual is
13  identified -- external candidate is identified as
14  an exception to the job posting policy, which you
15  described as posting internally before posting
16  externally, would those individuals -- would M&T
17  open that position up for competition with other
18  external candidates as well as internal candidates?
19       MS. GRAUMLICH:  Objection to form.
20       THE WITNESS:  Not always.
21       BY MS. CHUKWU:
22       Q.   What do you mean by not always?
23       A.   As I said, if a -- if an individual
24  possessed a unique skill set for a unique position,
25  the bank and management may decide that a single

1 individual is the person that they want, is the
2 person they put through the process, and is
3 ultimately the person that is offered the position.
4     Q.   And enhanced due diligence
5 investigator, would that be considered a unique
6 position?
7     A.   No.
8     Q.   M&T at Work specialist?  Is that
9 considered a unique position?
10     A.   No.
11     Q.   Assistant branch manager?
12     A.   No.
13     Q.   Is that considered unique?
14     What about branch manager?
15     A.   Well, by unique in this -- in this
16 context, I would not refer to a branch manager as
17 possessing the type of unique skill set that I
18 described in earlier answers, but that position
19 together with the others that you just listed
20 could, in certain events, be positions for which
21 management had identified individuals that they
22 wished to place in those positions.
23     And if that were the case, they might fill
24 those positions outside of the posting policy.
25     Q.   I'm going to show you --

1　slotted even if they are released to return within
2　90 days.
3　　　Q.　Does employee relations follow up with
4　the hiring managers to ensure that that is the
5　reason why this grid was left blank?
6　　　A.　I don't know, although I -- I believe
7　if it is blank, that is interpreted as an
8　indication that there are no such positions
9　available.
10　　　Q.　Well, I direct your attention to the
11　bottom of the first page of this document, ending
12　in Bates number 1810.
13　　　　Third line of the last grid under Coverage
14　Method Employed, it states temporary/contract
15　employee.
16　　　　Do you see that?
17　　　A.　Yes.
18　　　Q.　Does M&T permit the use of temporary
19　and/or contract employees in providing coverage for
20　an employee who is out on leave?
21　　　A.　I know that the bank utilizes temporary
22　and contract employees for temporary staffing
23　needs.  Whether they have done so for employees
24　that are currently out on disability leave
25　specifically, I don't know.

1    Q.   Have you known of M&T Bank using
2 temporary and/or contract employees to provide
3 coverage for branch manager and/or assistant branch
4 manager and/or M&T at Work specialist positions?
5         MS. GRAUMLICH:  Objection, compound.
6         THE WITNESS:  I am not aware.
7         BY MS. CHUKWU:
8    Q.   When you say you're not aware, is that
9 as it relates to branch manager positions?
10   A.   As to all of the positions you listed.
11   Q.   What about enhanced due diligence
12 investigator positions?
13   A.   I believe we have used contract
14 employees for the enhanced due diligence position,
15 but I am not certain of that.
16   Q.   With respect to your testimony about
17 the grid on the bottom on page -- the page ending
18 in Bates number 1811, with respect to completing
19 that grid, was that the same practice with respect
20 to whether or not it's left blank or if it's
21 completed that was in existence in 2013?
22   A.   I believe so.
23   Q.   Moving on, topic number 13 listed on
24 page 8 of the deposition notice.
25        Does M&T Bank have a transfer policy for

1  employees currently?

2      A.  I don't believe so.

3      Q.  Has M&T Bank ever had a transfer policy

4  for its employees?

5      MS. GRAUMLICH:  Well, objection to scope.

6  You can ask about the relevant time period.

7      THE WITNESS:  I don't believe so.

8      BY MS. CHUKWU:

9      Q.  You paused before answering.  Why is

10  that?

11      A.  There may be guidelines that

12  contemplate, for instance, expenses that the bank

13  will cover for an employee who is transferred to

14  another position, but I don't believe that there is

15  a policy that goes into the details of who will be

16  transferred and under what circumstances.

17      Q.  Are employees transferred to different

18  positions within M&T Bank?

19      A.  From time to time, yes.

20      Q.  Is that transfer different than the

21  workforce restructure that you testified about

22  earlier?

23      A.  I think it is, although there could be

24  overlap.  If an employee's position is eliminated

25  through a workforce restructure, an option for them

1 may be a transfer to another position, but I'm not
2 certain.
3    Q.   Are there employees that are
4 transferred that are not subject to the workforce
5 restructure program that you are aware of?
6    A.   Yes.
7    Q.   Under what circumstances?
8    A.   Where the bank has decided in
9 consultation with the employee that they would be
10 better deployed in a different position.
11    Q.   Just so the record is clear, when you
12 say deployed --
13    A.   Employed in.
14    Q.   Not in connection with the redeployment
15 process, correct?
16    A.   Correct.
17    Q.   With respect to those transfers, would
18 that employee be required to post for the position
19 that he or she is being transferred to?
20    A.   I'm not certain.
21    Q.   With respect to that transfer, would
22 that employee be required to interview for that
23 position?
24    A.   I believe that they would.
25    Q.   With respect to that transfer, would

1  STATE OF NEW YORK )

2                   ss:

3  COUNTY OF ERIE    )

4

5      I DO HEREBY CERTIFY as a Notary Public in and

6  for the State of New York, that I did attend and

7  report the foregoing deposition, which was taken

8  down by me in a verbatim manner by means of machine

9  shorthand.  Further, that the deposition was then

10  reduced to writing in my presence and under my

11  direction.  That the deposition was taken to be

12  used in the foregoing entitled action.  That the

13  said deponent, before examination, was duly sworn

14  to testify to the truth, the whole truth and

15  nothing but the truth, relative to said action.

16

17

18              *[signature: Lori K. Beck]*

19              LORI K. BECK,
               CSR, RDR, CRR,
20            Notary Public.

21

22

23

24

25